EXHIBIT

C

State of California

Department of Corrections and Rehabilitation
CDCR 128B

NAME: BLOODSAW, Theopric      NUMBER: P-20045      HOUSING: B8-131L

\* Subject's case has been reviewed by the Behavior Modification Unit (BMU) Staff. Based upon this review the following actions have been taken, and are effective upon this date.

SUBSEQUENT 180 DAYS

BMU PLACEMENT CRITERIA = Strikable Offense

[X] INITIAL PLACEMENT    [ ] RETAIN CURRENT STEP    [ ] RETURN TO PREVIOUS STEP    [ ] GRADUATE TO NEXT STEP
[ ] PLACE BACK TO _____

| [X] STEP #1 | [ ] STEP #2 | [ ] STEP #3 |
|---|---|---|
| *Privilege Group C status | *Privilege Group C status | *Privilege Group B status |
| (Consistent with CCR Section, 3044) | (Consistent with CCR Section, 3044) | (Consistent with CCR Section, 3044) |
| *Emergency telephone calls only | *One telephone call per month | *One telephone call per month |
| *¼ Canteen draw, $45.00 | *¼ Canteen draw, $45.00 | *½ Canteen draw, $90.00 |
| *Non-contact visits, if eligible | *Non-contact visits, if eligible | *BMU ½ Time Position |
| | | *Contact visits, if eligible |

Celling status    [X] Double cell approved    [ ] Single cell only

Ethnicity:    [ ] W  [X] B  [ ] Other    [ ] N HISP  [ ] S HISP

Gang affiliation: Crip

Aka: "T" "Theo"

Enemies Reviewed By:    D. MELTON, CCI

ENEMY CONCERNS: [ ] NONE  [X] NONE AT PBSP  [ ] NOTED AS FOLLOWS: _____

DISTRIBUTION:
    ORIGINAL: C-File
    CC: AWC File
        Inmate

D melton  CCI
B Facility, BMU-CCI

DATE: 4/29/08      PBSP BMU PROGRAM STATUS CHRONO

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS AND REHABILITATION
CDCR 128 B

3

NAME: BloodsAw     NUMBER: P20045     HOUSING: B8-131L

# *BEHAVIOR MODIFICATION UNIT (BMU) STEP PROCESS / PRIVILEGES AND EXPECTATONS*

**\*STEP #1**: Initial Placement: PG / C status for approximately 60 days (Consistent with CCR, Title 15, Section 3044):

   1. For a minimum of 90 days or 180 days, if Subsequent Placement, beginning the date of the Committee action.
   2. Authorized emergency telephone calls only.
   3. One-quarter monthly canteen allowance; draw not to exceed $45.00.
   4. Non-contact visits, if eligible.
   5. If the inmate meets the goals of the Individual Treatment Plan (ITP), he will graduate to Step 2.

**\*STEP #2**: Privilege Group C status for approximately 30 days (Consistent with CCR, Title 15, Section 3044):

   1. One telephone call per month.
   2. One-quarter monthly canteen allowance; draw not to exceed $45.00.
   3. Non-contact visits, if eligible.
   4. If the inmate meets the goals of the ITP, he will graduate to Step 3.

**\*STEP #3**: Privilege Group B status for approximately 30 days (Consistent with CCR, Title 15, Section 3044):

   1. Inmate is eligible for a job within the BMU only.  As enough jobs can be provided and encouraged success, these porter and barber jobs may be designated half-time positions.
   2. One telephone call per month.
   3. One-half monthly canteen allowance; draw not to exceed $90.00.
   4. Contact visits, if eligible.
   5. If the inmate meets the goals of the ITP, he will graduate to Step 4, and be released to the General Population.

**\*STEP #4**: Upon completion of the Individual Treatment Plan (ITP), inmates will be returned to traditional General Population (GP) housing, upon bed availability.

Graduation to succeeding ITP Steps is entirely based upon the inmate's positive performance.  Specifically:  The inmate must remain disciplinary free, (including any 128 A Counseling Chrono's), maintain grooming standards, and participate to the best of his ability in the programs assigned to him in his Individual Treatment Plan (ITP).  The above mentioned Step increases shall be documented on a CDCR, Form 128-B Informational Chrono by the appropriate BMU staff, only if said action is non-adverse, per Operational Procedure #225.

## D. MELTON, CCI
Behavior Modification Unit Counselor

cc:     C-File
        CC-I
        Inmate

| *I acknowledge receipt of the Step Process, Privilege Restrictions, and Graduation Requirements: | (A) Refused to attend   4/29/08 |
|---|---|
| | Inmate's Signature          Date |

4

NAME: __Bloodsaw__    NUMBER: __P20045__    HOUSING: __B8-131L__

**\*BEHAVIOR MODIFICATION UNIT (BMU) STEP PROCESS / PRIVELEGES AND EXPECTATONS:\***

**\*STEP #1:  Initial Placement:Work Group/Privilege Group C/C status for  approximately 30days:**
1.  Authorized emergency telephone calls only.
2.  One-quarter monthly canteen draw allowance, not to exceed $45.00.
3.  A minimum of ten hours of out-of-cell time per week, which includes dayroom, workshops, and self -help group activities, as limited by physical design and local institution security and facility needs.
4.  Out -of-cell time limited to contact with BMU inmates only.
5.  Non-contact visits, if eligible.
6.  If the inmate meets the goals of the Individual Treatment Plan (ITP), he will graduate to Step 2.

**\*STEP #2:  Work Group / Privilege Group C/C status / for approximately 30 days:**
1.  One telephone call per month.
2.  One-half monthly canteen draw allowance, not to exceed $90.00.
3.  A minimum or ten hours out-of-cell time per week, which includes dayroom workshops, and self-help group activities, as limited by physical design and local institution security and facility needs.
4.  Non-contact visits, if eligible.
5.  If the inmate meets the goals of the ITP, he will graduate to Step 3.

**\*STEP #3:  Work Group / Privilege Group B/B status /for  approximately 30 days:**
1.  Inmate is eligible for a job within the BMU only.  As enough jobs can be provided and encouraged success, these porter and barber jobs may be designated half-time positions
2.  One telephone call per month
3.  One-half monthly canteen draw allowance, not to exceed $90.00.
4.  A minimum of ten hours out-of-cell time per week, which includes **yard**, dayroom, workshops, and self-help group activities, as limited by local institution security and facility needs.
5.  Contact visits, if eligible.
6.  If the inmate meets the goals of the ITP, he will graduate to Step 4.

**\*STEP #4:  Upon completion of the Individual Treatment Plan (ITP), inmates will be re-housed into alternate General Population (GP) housing, upon bed availability.**


Graduation to succeeding steps is entirely based upon the inmate's positive performance.  Specifically:  The inmate must remain disciplinary free, (including any 128 A Counseling Chronos), maintain grooming standards, and participate to the best of the inmates ability in the programs assigned to him in his Individual Treatment Plan (ITP).

Reference:  Operational Procedure #225/BMU




**D. MELTON, CCI**
Behavior Modification Unit Committee Member

cc:    CC-I
       C-File
       inmate

| **\*I acknowledge receipt of the Step Process, Privilege Restrictions and Graduation Requirements:** | I/m copy _Inmate's Signature_ | 4/29/08 _Date_ |
| --- | --- | --- |

99

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

## NOTICE OF CLASSIFICATION HEARING
CDC 128-B1 (Rev. 2/95)

B8-120-209ᴸ

| INMATE NAME | CDC NUMBER | TODAY'S DATE |
|---|---|---|
| Bloodsaw | P20045 | 9-13-06 |

YOU WILL APPEAR BEFORE A CLASSIFICATION COMMITTEE ON _asap_ FOR CONSIDERATION OF A
MAJOR PROGRAM CHANGE AS FOLLOWS:

☐ TRANSFER

☐ INCREASE IN CUSTODY

☐ ASSIGNMENT TO SECURITY HOUSING

☐ REMOVAL FROM PROGRAM

☒ OTHER  Bmv placement

REASON:  UCC Special Review

| STAFF: NAME | | |
|---|---|---|
| D. Melton | CCI | PBSP |

ROUTING INSTRUCTIONS: ORIGINAL-CLASSIFICATION COMMITTEE    COPY-INMATE

| | | |
|---|---|---|
| NO: P-20045 | NAME: BLOODSAW, Theopric | HSG: A2-109L |
| Custody: CLO BS | CS: 87 (IV)    C/C EFF 8/3/05 | Assignment: U/A |
| RelDate: EPRD 12/24/19 | Reclass: 6/2006 | Action: AFFIX "S" SUFFIX; RETAIN C/C |

Inmate Bloodsaw appeared before PBSP FAC A UCC on this date for Program Review. Prior to Committee, D. Melton was assigned as staff assistant and was present during Committee. The staff assistant was assigned for the following reasons: CCCMS level of care, and S's current RGPL is 4.0 or less. Committee effectively communicated with S as noted: Short sentences using simple English. Committee noted S has an RGPL of 3.3. Effective communication was achieved, and S appeared to understand. This Program Review is being held for the two following reasons: (1) Review for "S" suffix placement; and (2) Address prior D1/D and/or C/C status. S was asked if he was willing to take a cellie and program, and S stated, "No." Committee noted S has no cellmate and the "S" custody suffix has not previously been applied. **Committee acts to affix the "S" suffix, due to S adamantly refusing to take a cellie and program.** S was advised that the "S" suffix can be taken off when he decides to program and adhere to CDC rules and regulations of double celling. Committee notes that ICC of 6/22/05, assigned S to WG/PG D1/D when placed in AD-SEG. Per memo of 9/17/04, any I/M who is placed in AD-SEG while on C/C status shall be assigned to WG/PG D2/D. This shall be assigned whether or not the move was adverse or non-adverse. **Committee acts to clear this error and make S D2/D effective 6/10/05 through 8/2/05, then C/C 8/3/05 until present UCC.** As S is adamantly refusing to program, **Committee acts to retain S on WG/PG C/C.** Committee further acts to continue custody level at CLO BS, with WG/PG C/C effective 8/3/05. S participated in Committee, acknowledged understanding, and agreed with Committee action, stating, "I refuse to take a cellie. I'm telling you straight up, I'm a Crip." S was advised of Committee's decision and his right to appeal, and that any appeal of this Committee action must be submitted within 15 working days of this date, whether he has received the CDC Form 128G Classification chrono or not. Next scheduled Committee will be in 6/2006, for Annual Review.

| | | |
|---|---|---|
| CHAIRPERSON: D. SWEARINGEN/FC(A) | S. WALCH/CCII(A) | RECORDER: M. THORNTON/CCI |

CC: ☐OBIS   ☐CSR   ☐IGI   ☐PSYCH   ☐MED    ☐C&PR   ☐OTHER _____     ☒128-C2 in C-file
                              (THORNTON/jw)    Classification        FAC-A UCC/REVIEW       Inst: PBSP

Committee Date: 10/18/05

*orig.*

**NO: P-20045**    **NAME: BLOODSAW, Theopric**    **Housing:** B8-209
Custody: CLO BS    CS: 93 (IV)    C/C Eff. 07/14/04    Assignment: VUN
RelDate: EPRD 12/24/2019    Reclass: 10/25/06    **Action:**  **PLACE IN BMU PROGRAM FOR 90 DAYS, ON STEP 1 OF ITP FOR 30 DAYS. CONTINUE C/C EFFECTIVE 07/14/06.**

Inmate Bloodsaw appeared before PBSP FAC B BMU UCC on this date for Annual/Initial Review. Committee notes CDC 128C, Madrid Exclusionary chrono, dated 03/01/04, denoting no level of care. DDP Review: 128C-2 in Central File. Prior to Committee, Correctional Counselor I Webster was assigned as staff assistant and was present during Committee. The staff assistant was assigned for the following reasons: most current RGPL under 4.0. Committee notes S has an RGPL of 3.3. Effective communication was achieved using short sentences and simple English, and S appeared to understand. Committee notes S's reason for Behavior Modification Unit (BMU) placement is due to: S was deemed a program failure defined by the CCR, Title 15, Section 3000. S is determined to be compatible with another inmate and refuses to voluntarily double cell, or refuses to participate in the racial integration policy as defined in the Johnson v. State of California settlement agreement. UCC notes latest RVR dated 03/28/05 for Refusal to Obey Orders (refused a cellmate). The Director's rules, PBSP expectations, and specific privileges and non-privileges of WG/PG C/C were thoroughly explained. Grooming standards and PBSP expectations were discussed and S stated he was willing to comply. Committee notes S has one new 115 this review period; fro Refusal to Obey Orders dated 02/23/06 (S refused to return to his assigned cell). Placement score is increased by 2 points to a current Level IV score of 93 points. Mandatory score of 19 is noted for VIO. S was advised to notify staff immediately of any enemy situation which may arise. Committee noted S has no cellmate, and the "S" suffix has previously been applied. S is approved for 270 design facilities. There have been changes in S's commitment case factors since Initial Classification chrono dated 03/02/04. **Committee acts to place S into the BMU program for 90 days and place on step # 1 of Individual Treatment Plan (ITP) for 30 days. S was advised of his ITP which includes the basic requirement that he remain disciplinary free for 90 days prior to any consideration for his release from BMU and his completion of the selected behavior modification assignments. Continue WG/PG C/C status effective 07/14/06, and continue at CLO BS custody. Committee also acts to retain "S" suffix due to UCC action dated 10/18/05. S adamantly refused to double cell. UCC notes S is reviewed and cleared for double celling although he refused to double cell.** S participated, acknowledged understanding, and disagreed with Committee action, stating "I won't take a cellie because of legal work and medical issues. I am here illegally. I am disabled, I have spine issues." UCC stated single cell status is not a ADA issue. S continued stating, "There is nothing wrong with me. I know what I am doing, but I am disabled. I could not care about the US." UCC stated you have to appeal to the courts. S lastly stated "I have been discriminated against as a Black man." UCC notes S walked unassisted to UCC, sat upright, straddling a chair, and did not grimace when he stood back up to exit the Committee room. S is eligible to work around computers, computer systems, or be in areas that may have access to personal information per PC 2702, PC 502, or PC 5071. PC 2933 and 2930 complied with. S was advised of Committee's decision and his right to appeal. The inmate has been advised that any appeal of this committee action must be submitted within 15 working days of this date, whether he has received the CDC form 128-G classification chrono or not. Next scheduled Committee will be on 10/25/06 for Program Review.

**CHAIRPERSON:** M. FOSS/NC    J. ROBERTSON/CCII    S. ROBERTS/EDUCATION    **RECORDER:** D. MELTON/CCI

☐OBIS ☐CSR ☐IGI ☐PSYCH ☐MED ☐ OTHER

Committee Date:  09/21/06    (MELTON/ew)    Classification    FAC-B BMU UCC    INITIAL REVIEW    Inst: PBSP

**CDCR#: P-20045**      **NAME: BLOODSAW, Theopric**      Housing: B8-209L
Custody: CLOB          CS: 93 (IV)          C/C Eff. 07/14/04          Assignment: BMU STEP #1
Rel Date: EPRD 12/24/2019      Reclass: 02/27/07      **Action:   REAFFIRM BMU PLACEMENT**
                                                      **90 DAYS.  RETAIN ON STEP # 1**
                                                      **30 DAYS.  CONTINUE   WG/PG**
                                                      **C/C EFF. 07/14/04.   D/C CLEAR**

Inmate **Bloodsaw** refused to appear before PBSP FAC-B Behavior Modification Unit (BMU) UCC on this date for 30 Day Program Review. Committee notes CDC 128C, Madrid Exclusionary Chrono, dated 03/01/04, denoting no level of care. DDP Review: 128C-2 in Central File and is clear noting NCF. Committee notes S has an RGPL of 3.3. Prior to Committee, Correctional Officer J. Thom was assigned as Staff Assistant, interviewed S at least 24 hours prior to UCC, per CCR, Title 15, Section, 3315(d)(2)(A) and was present during Committee. The Staff Assistant was assigned based on S 's current RGPL is 4.0 or less. S is advised, via this chrono, to notify staff immediately of any enemy situations that may arise.  Grooming standards and Pelican Bay State Prison (PBSP) expectations were discussed.  S is cleared for double celling per PBSP's current double cell policy, and can be celled with Black ethnic groups, although he refuses to accept a cellie. Committee further notes that S has no current cellmate, and the "S" custody suffix has not been previously applied.  S is approved for 270' design facilities.  Placement score is noted to be 93 Level IV points. Committee further notes S was initially placed into the BMU program on 09/21/06, based on: **S was deemed a program failure defined by the CCR, Title 15, Section, 3000.**  Committee notes that since S's prior 30 day Program Review, he received RVR dated 01/22/07, for Recurring Failure to Meet Program Expectations.  S has also refused to participate in the required BMU ITP classes, dated, 01/18/07 and 01/19/07.  Based on the above information, UCC is in mutual agreement that S has not met the necessary requirements of Step # 1, and therefore, is not eligible to graduate to Step #2.  **Step # 1 Privileges include, but are not limited to:**

   ❖   WG/PG, C/C status for approximately 30 days.

   ❖   Emergency telephone calls only.

   ❖   One-quarter (1/4) the monthly canteen draw allowance, not to exceed $45.00.

   ❖   A minimum of 10 hours out-of-cell time per week, which may include dayroom, workshops (ITP classes) and
       self-help-group activities, as limited by physical design and local institution security and facility needs.

   ❖   Non-contact visits, if eligible; with approved visitors only.

**Committee acts to reaffirm S's placement in the BMU program and retain on Step # 1 of the Individual Treatment Plan (ITP) for approximately 30 days.  Committee also acts to continue WG/PG, C/C status effective 07/14/04, and continue at CLOB custody.  S was reviewed and cleared for double-celling, noting no history of in-cell violence.**  S is advised, via this chrono, that he must remain disciplinary free, including any 128-A Counseling Chronos, and complete the selected behavior modification assignments as directed, prior to being considered for release from the BMU to the General Population (GP).  S's case will be reviewed in approximately 30 days to establish future program modifications.  S is eligible to work around computers, computer systems, or be in areas that may have access to personal information per PC 2702, PC 502, or PC 5071. PC 2933 and 2930 have been complied with.  S was advised, at the completion of UCC, via the staff assistant, of Committee's decision and his right to appeal, and S appeared to understand.  Next 30 day Program Review will be on 02/27/07.  Next Annual Review in 06/07.

CHAIRPERSON:   M. FOSS/IC          J. ROBERTSON/CCI I          S. ROBERTS/EDUCATION          RECORDER: D. MELTON/CCI

☐OBIS ☐CSR ☐IGI ☐PSYCH ☐MED ☐ OTHER

Committee Date: **01/30/07**   (MELTON)          Classification          **BMU**/UCC          PROGRAM REVIEW          Inst: PBSP

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS
CDCR 128G (REVISED 4/07)

| | | |
|---|---|---|
| **NO:** P-20045 | **NAME:** BLOODSAW, THEOPRIC | **HSG:** ASU E1 |

**Custody:** MAX      **PS:** 133    **Level:** IV    **WG/PG:** D1/D    **EFF:** 09/13/2007 **Assignment:** ASU MERD 04/12/2008

**Rel Date:** EPRD 12/01/2021 **Reclass:** 06/12/2008 **Action:** RETAIN SHU INDET STATUS UPON EXPIRATION OF MERD; REFER TO CSR RX

**BPH Rev:** 0      TX PBSP/COR SHU

**RECOMMENDED ACTION:** Retain in SHU indeterminate status upon expiration of MERD. Refer to CSR recommending transfer PBSP/COR SHU.

**ADMINISTRATIVE PLACEMENT FACTORS:** Inmate BLOODSAW refused to appear before PBSP AD-SEG, ICC on this date for Pre-MERD Review. Pursuant to CCR 3336 the Reason for Placement (Part A) is: S is serving a determinate SHU term due to RVR 04/12/07, Battery on a Peace Officer, with a <u>MERD of 04/12/2008</u>.

**DISCUSSION:** Committee notes S is endorsed for transfer to PBSP SHU. Due to the lack of SHU bedspace S has remained in ASU on Active MERD. Committee reviewed S's disciplinary history which includes two RVR's that resulted in determinate SHU terms. S has been found guilty of RVR's dated 08/11/99, Attempted Battery on a Peace Officer, 04/12/07, Battery on a Peace Officer 12/19/07, Indecent Exposure and numerous RVR's for recurring Failure to Meet Program/Work Expectations. Committee views S's refusal to appear at ICC for his Pre-MERD Review, as another example of his refusal to program. Committee deems S's presence in GP poses an unacceptable risk to the safety of others and the security of the institution. **Committee acts to retain S on SHU Indeterminate status upon expiration of MERD.**

**STAFF ASSISTANCE:** More than 24 hours prior to Committee, Correctional Officer J. Kay was assigned as SA. The SA was assigned as S has no documented reading level or his reading level is below 4.0.

**MENTAL HEALTH REVIEW:** ICC notes CDCR 128-C, dated 06/27/01, noting S is not a participant in the MHSDS level of care.

**DA ACTION:** N/A

**CELL STATUS:** S is cleared for double celling.

**YARD STATUS:** Committee acts to place S on Walk Alone Yard Status, Individual Exercise Yard, based upon case factor review.

**COMMITTEE ACTION:** Committee acts to refer this case to the CSR with recommendation for transfer to PBSP, with alternate of COR, for SHU placement. This is an adverse transfer. Upon transfer, S's custody will be MAX; WG/PG D1/D effective 09/13/07 and single cell housing will not be required.

**INMATE COMMENTS:** N/A

**APPEAL RIGHTS:** As S's case was reviewed in absentia, he will be advised of his rights via this chrono.

**CHAIRPERSON:**    F. JACQUEZ/CDW                          **RECORDER:**        S. O'DELL/CCII

**COMMITTEE MEMBERS:**      R. BELL/FC                J. PASCOE/PHD

**DATE:**    03/12/2008            ASU INSTITUTIONAL CLASSIFICATION COMMITTEE                    **Inst.:** PBSP

804 FAXED ON 03/31/05

STATE OF CALIFORNIA

## RULES VIOLATION REPORT

DEPARTMENT OF CORRECTIONS

| CDC NUMBER | INMATE'S NAME | RELEASE/BOARD DATE | INST. | HOUSING NO. | LOG NO. |
|---|---|---|---|---|---|
| P-20045 | BLOODSAW | PRD 11/24/17 PBSP | | AF2-125L | A05-03-0073 |

| VIOLATED RULE NO(S). | SPECIFIC ACTS | LOCATION | DATE | TIME |
|---|---|---|---|---|
| 3005(b) | REFUSAL TO OBEY ORDERS | AF2-125 | 03/28/05 | 0930 HRS |

CIRCUMSTANCES

On March 28, 2005, at approximately 0930 hours, I was performing my duties as the AF2 Floor Officer #2 with RDO's of Wednesday/Thursday. I was informed by the Facility 'A' Program Sergeant M. Lujan that AF2 A-Section (PBSP Orientation Unit) would be receiving several inmates from CDC transports. Several inmates already housed in the Orientation section were cleared by the Facility 'A' Unit Classification Committee (UCC) for release from Orientation to the mainline. Sergeant Lujan instructed me to double cell the existing single cell General Population inmates housed in AF2, in order to allow the inmates housed in Orientation cleared by UCC to be moved into the vacated cells in A and B Sections. I informed Inmate BLOODSAW, P-20045, AF2-125L, it was necessary that he receive a cell partner. BLOODSAW stated he would not accept a cellmate. BLOODSAW was informed that his response would be considered a refusal to comply with orders related to PBSP General Population housing expectations that inmates voluntarily double cell. BLOODSAW was not receptive to counseling or instructions to double

### CONTINUED ON CDC-115-C

| REPORTING EMPLOYEE (Typed Name and Signature) | DATE | ASSIGNMENT | RDO'S |
|---|---|---|---|
| ▶ L.L. GUTIERREZ, CORRECTIONAL OFFICER | 4-3-05 | AF2 FLOOR | W/TH |

| REVIEWING SUPERVISOR'S SIGNATURE | DATE | ☐ INMATE SEGREGATED PENDING HEARING | | |
|---|---|---|---|---|
| ▶ | 4-3-05 | DATE | N/A | LOC. N/A |

| CLASSIFIED | OFFENSE DIVISION: | DATE | CLASSIFIED BY (Typed Name and Signature) | HEARING REFERRED TO |
|---|---|---|---|---|
| ☐ ADMINISTRATIVE ☒ SERIOUS | F (3) | 4/5/05 | Swearingen | ☐ HO ☐ SHO ☐ SC ☐ FC |

COPIES GIVEN INMATE BEFORE HEARING

| ☐ CDC 115 | BY: (STAFF'S SIGNATURE) | DATE | TIME | TITLE OF SUPPLEMENT |
|---|---|---|---|---|
| | M. Thornton | 4/6/05 | 090D | N/A |

| ☐ INCIDENT REPORT LOG NUMBER | BY: (STAFF'S SIGNATURE) | DATE | TIME | BY: (STAFF'S SIGNATURE) | DATE | TIME |
|---|---|---|---|---|---|---|
| N/A | ▶ N/A | | | | | |

HEARING

REFERRED TO ☐ CLASSIFICATION ☐ BPT/NAEA

| ACTION BY: (TYPED NAME) | SIGNATURE | DATE | TIME |
|---|---|---|---|
| P. TERRY, FACILITY A LIEUTENANT | ▶ | 4/10/05 | 0750 |

| REVIEWED BY (SIGNATURE) | DATE | CHIEF DISCIPLINARY OFFICER'S SIGNATURE | DATE | TIME |
|---|---|---|---|---|
| ▶ P.T. SMITH, FACILITY A CAPTAIN | | ▶ LETHEL POLK, AWGP | 4-13-05 | |

| ☐ COPY OF CDC 115 GIVEN INMATE AFTER HEARING | BY: (STAFF'S SIGNATURE) | DATE | TIME |
|---|---|---|---|
| | ▶ Ron White | 4/14 | 1330 |

CDC 115 (7/88)

STATE OF CALIFORNIA                                                      DEPARTMENT OF CORRECTIONS
**RULES VIOLATION REPORT - PART C**                                     PAGE __2__ OF __2__

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|------------|---------------|------------|-------------|--------------|
| P-20045 | BLOODSAW | A05-03-0073 | PBSP | 03/28/05 |

☐ SUPPLEMENTAL  ☒ CONTINUATION OF:  ☒ 115 CIRCUMSTANCES  ☐ HEARING  ☐ IE REPORT  ☐ OTHER____

cell.  BLOODSAW is in direct violation of CCR Title 15, Section 3005(b), Obeying Orders and CCR
3001, Subject to Regulations with regards to PBSP inmate housing expectations.  BLOODSAW's
refusal to accept a cell partner has created a significant delay in the ability for other
inmates to program at PBSP.  Inmates housed in Orientation and cleared by UCC are not able to
move to a General Population cell due to BLOODSAW's refusal.  BLOODSAW has not been placed on
Single Cell Status by UCC.

This inmate is NOT EOP or Crisis Bed.  Following current guidelines for Mental Health
Assessment, the circumstances of this offense have been carefully evaluated.  The reviewing
supervisor has concluded that a Mental Health Assessment is NOT required.

| SIGNATURE OF WRITER | DATE SIGNED |
|---------------------|-------------|
| L.L. GUTIERREZ, CORRECTIONAL OFFICER | 4/3/05 |

| ☒ COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staff's Signature) C/O M. Hostza | DATE SIGNED 4/6/05 | TIME SIGNED 0900 |

CDC 115-C (5/95)                                                                    OSP 99 25082

# SERIOUS RULES VIOLATION REPORT

| CDC NUMBER | INMATE'S NAME | VIOLATED RULE NO(S). | DATE | INSTITUTION | LOG NO. |
|---|---|---|---|---|---|
| P-20045 | BLOODSAW | 3005(b) | 03/28/05 | PBSP | A05-03-0073 |

REFERRAL FOR FELONY PROSECUTION IS LIKELY IN THIS INCIDENT ☐ YES ☒ NO

## POSTPONEMENT OF DISCIPLINARY HEARING

| | INMATE'S SIGNATURE | DATE |
|---|---|---|
| ☐ **I DO NOT REQUEST** my hearing be postponed pending outcome of referral for prosecution. | ▶ | |
| ☐ **I REQUEST** my hearing be postponed pending outcome of referral for prosecution. | ▶ | |

| DATE NOTICE OF OUTCOME RECEIVED | DISPOSITION |
|---|---|
| | N/A |

| | INMATE'S SIGNATURE | DATE |
|---|---|---|
| ☐ **I REVOKE** my request for postponement. | ▶ | |

## STAFF ASSISTANT

| STAFF ASSISTANT | INMATE'S SIGNATURE | DATE |
|---|---|---|
| ☐ REQUESTED  ☒ WAIVED BY INMATE | ▶ X Refused To Sign | 4/6/05 |

| ☒ ASSIGNED | DATE 4/6/05 | NAME OF STAFF CTO M. Thornton   B. GARDNER |
|---|---|---|
| ☐ NOT ASSIGNED | REASON TABE: 3.3 | |

## INVESTIGATIVE EMPLOYEE

| INVESTIGATIVE EMPLOYEE | INMATE'S SIGNATURE | DATE |
|---|---|---|
| ☐ REQUESTED  ☒ WAIVED BY INMATE | ▶ X Refused To Sign | 4/6/05 |

| ☐ ASSIGNED | DATE | NAME OF STAFF |
|---|---|---|
| ☒ NOT ASSIGNED | REASON DNMC PER 3315 (d) (1) | |

EVIDENCE / INFORMATION REQUESTED BY INMATE:

## WITNESSES

WITNESSES REQUESTED AT HEARING (IF NOT PRESENT, EXPLAIN IN FINDINGS)

☐ REPORTING EMPLOYEE   ☐ STAFF ASSISTANT   ☐ INVESTIGATIVE EMPLOYEE   ☐ OTHER _____   ☒ NONE

| WITNESSES (GIVE NAME AND TITLE OR CDC NUMBER) | GRANTED | NOT GRANTED | WITNESSES (GIVE NAME AND TITLE OR CDC NUMBER) | GRANTED | NOT GRANTED |
|---|---|---|---|---|---|
| | ☐ | ☐ | | ☐ | ☐ |
| | ☐ | ☐ | | ☐ | ☐ |

INVESTIGATIVE REPORT: Investigative Employees must interview the inmate charged, the reporting employee, and any others who have significant information, documenting the testimony of each person interviewed. Review of files, procedures, and other documents may also be necessary.

| | INVESTIGATOR'S SIGNATURE | DATE |
|---|---|---|
| | ▶ | |

| ☒ COPY OF CDC 115-A GIVEN INMATE | BY: (STAFF'S SIGNATURE) ▶ CTO M. Thornton | TIME 0900 | DATE 4/6/05 |
|---|---|---|---|

CDC 115-A (7/88)               *— If additional space is required use supplemental pages —*               OSP 03 74845

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

RULES VIOLATION REPORT - PART C

PAGE ___1___ OF ___2___

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| P-20045 | BLOODSAW | A05-03-0073 | PBSP | 4/11/05 |

| ☐ SUPPLEMENTAL | ☑ CONTINUATION OF: | ☐ CDC 115 CIRCUMSTANCES | ☑ HEARING | ☐ I.E. REPORT | ☐ OTHER |
|---|---|---|---|---|---|

**Hearing**: The hearing was convened on 04/10/2005, at approximately 0750 hours when I introduced myself to BLOODSAW as the Hearing Officer for this disciplinary. BLOODSAW stated he was in good health with normal vision and hearing. BLOODSAW acknowledged that he received a copy of the following document more than 24 hours in advance of the hearing: CDC-115. This report as well as the disciplinary charge of REFUSAL TO OBEY ORDERS was reviewed with BLOODSAW in the hearing. He stated that he understood both and that he was prepared to begin the hearing.

**District Attorney**: This has not been referred for criminal prosecution.

**Due Process**: The disciplinary was served on the inmate within 15 days of discovery and the hearing was held within 30 days of service. The inmate received his copies of all documents more than 24 hours in advance of the hearing. There are no due process issues. The behavior of this inmate was evaluated at the time that the Reviewing Supervisor reviewed this disciplinary report. The Reviewing Supervisor concluded that a mental health assessment was not required. The SHO concurs. There is no compelling need for a mental health assessment based upon the circumstances given in this report.

**Staff Assistant**: BLOODSAW was assigned a Staff Assistant as BLOODSAW is illiterate (reading score of 4.0 or less). The assigned SA, OFFICER B. GARDNER, was present at the hearing. The assigned SA confirmed that BLOODSAW was interviewed more than 24 hours in advance and offered an explanation of hearing procedures, disciplinary charges, the evidence supporting these charges and the right to request confidentiality. BLOODSAW stated that he understood and that he was prepared to begin.

**Investigative Employee**: An IE was not assigned as the issues are not complex and the available information is sufficient. Per the CDC 115-A and his statements in the hearing, BLOODSAW has not requested IE assignment.

**Request for Witnesses**: BLOODSAW waived all witnesses and the SHO requested none.

**Video and photo evidence**: Videotape or photographic evidence was not an issue for this hearing.

**Plea**: Guilty

**Hearing testimony**: BLOODSAW gave the following testimony as his defense: "No statement."

**Finding**: Guilty of the Div. F-3 (CCR 3315 (a)(3)(J)) offense REFUSAL TO OBEY ORDERS. This offense requires evidence that the inmate was given a direct order by a staff member and the inmate refused to comply with this order. This finding is based upon the following preponderance of evidence:

A. The testimony of OFFICER L. GUTIERREZ in the disciplinary report of 03/28/2005 wherein OFFICER GUTIERREZ testifies that BLOODSAW was ordered to double cell and refused to comply.
B. BLOODSAW'S guilty plea at the time of this hearing.

**Disposition**: Assessed **30 day credit forfeiture** for this Div. F offense. BLOODSAW was informed that his credit restoration period began 03/29/2005 and this restoration period is a minimum of three months (if within 60 days of scheduled release, the minimum is reduced to one month). If he is found guilty of any administrative or serious CDC-115 issued during this credit restoration period, he forfeits his eligibility for restoration. If he completes this restoration period disciplinary free, he may request a classification review. Classification will make the final determination whether he is eligible for restoration or request an additional period of disciplinary free conduct. Contraband was disposed of per DOM

| SIGNATURE OF WRITER | TITLE | DATE NOTICE SIGNED |
|---|---|---|
| P. Terry | Correctional Lieutenant | 4/11/05 |

| COPY OF CDC-115-C GIVEN TO INMATE | GIVEN BY: (STAFF'S SIGNATURE) | DATE SIGNED: | TIME SIGNED: |
|---|---|---|---|
| X | | 4-14-05 | 1330 |

STATE OF CALIFORNIA                                      DEPARTMENT OF CORRECTIONS
RULES VIOLATION REPORT - PART C                          PAGE __2__ OF __2__

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| P-20045 | BLOODSAW | A05-03-0073 | PBSP | 4/11/05 |

| ☐ SUPPLEMENTAL | ☑ CONTINUATION OF: | ☐ CDC 115 CIRCUMSTANCES | ☑ HEARING | ☐ I.E .REPORT | ☐OTHER |
|---|---|---|---|---|---|

52051.1.   Appeal rights were explained.   BLOODSAW was referred to CCR §3084.1 and following for additional
information on appeal procedures.

**Additional penalties**: None accessed.

| SIGNATURE OF WRITER | | TITLE | DATE NOTICE SIGNED |
|---|---|---|---|
| P. Terry | | Correctional Lieutenant | 4/11/05 |
| COPY OF CDC-115-C GIVEN TO INMATE | GIVEN BY: (STAFF'S SIGNATURE) | DATE SIGNED: | TIME SIGNED: |
|  |  | 4-14-05 | 1330 |

STATE OF CALIFORNIA                                                                      DEPARTMENT OF CORRECTIONS
                                                                                          CDC-128 A (8-87)

**NAME and NUMBER**     BLOODSAW              P-20045          **CELL:**   AF04-223U

On 04/01/04, at approximately 1700 hours, while I was assigned as the AF-4 Control Booth Officer, I was informed by A-Facility Program Sergeant J. Diggle that I needed to empty a cell. Sergeant Diggle gave me a list of compatible inmates. On the list were inmate BLOODSAW, P20045, AF4-223 and inmate HALE, K-55936, AF4-230. At approximately 1750 hours I opened cell AF4-223 and cell AF4-230. BLOODSAW and HALE walked down to the C-Section dayroom. I informed both inmates I needed to make a empty cell. HALE stated, "No way" and walked back to his assigned cell. BLOODSAW stated, "You're trying to set me up" and walked back to his assigned cell. General population inmates at P.B.S.P. are required to comply with P.B.S.P. housing expectations. It is the expectation that compatible inmates housed in general population double cell. Both BLOODSAW and HALE are non-affiliated black inmates.

This disciplinary was originally written by Correctional Officer J. Holz as a CDC 115 for FAILURE TO MEET PROGRAM EXPECTATIONS. Prior to being classified I reduced it to a CDC 128A in the interest of justice. This is in keeping with the progressive disciplinary process.

ORIG  :  C-File
cc    :  AWC File

                                                            R. K. Bell
                                                            Correctional Lieutenant

**DATE**    04-06-04                                         PBSP                        **CUSTODIAL**

                                *I'm COPY*

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS
CDC-128 B (8-87)

**NAME and NUMBER**    BLOODSAW                P-20045              **CELL:**    AF4-226L

On Thursday August 19,2004  at approximately 1900 Hours, I escorted inmate **MADDOX H-73538**  to Unit 4 ( A-Facility ) in an attempt to voluntary double cell inmate **MADDOX T-06898** with inmate **BLOODSAW**. Inmate **BLOODSAW** refused to accept **MADDOX** as his cell mate.  **BLOODSAW**   stated, " I ain't gonna take a cellie."   General Population inmates at Pelican Bay State Prison are required to comply with Pelican Bay State Prisons housing expectations.  It is the expectation that compatible inmates  housed  in  General  Population  voluntarily  double  cell.    All  documentation  available  states  that  both  inmates  are compatible due to similar case factors.  **BLOODSAWS'** refusal to accept a cell mate  will result in a CDC 115 in the future.

ORIG    :    C-File
Cc      :    AWC
        :    CCI
        :    Inmate
**DATE**    08/19/04

D. THOMPSON
CORRECTIONAL OFFICER

PBSP              **GENERAL CHRONO**

STATE OF CALIFORNIA
**ADMINISTRATIVE SEGREGATION UNIT PLACEMENT NOTICE**
CDC 114-D (Rev 10/98)

DEPARTMENT OF CORRECTIONS

| DISTRIBUTION: | |
|---|---|
| WHITE - CENTRAL FILE | CANARY - WARDEN |
| BLUE - INMATE (2ND COPY) | PINK - HEALTH CARE MGR |
| GREEN - ASU | GOLDENROD - INMATE (1ST COPY) |

| INMATE'S NAME **BLOODSAW** | CDC NUMBER **P-37794** |
|---|---|

## REASON(S) FOR PLACEMENT (PART A)

- [ ] PRESENTS AN IMMEDIATE THREAT TO THE SAFETY OF SELF OR OTHERS
- [ ] JEOPARDIZES INTEGRITY OF AN INVESTIGATION OF ALLEGED SERIOUS MISCONDUCT OR CRIMINAL ACTIVITY
- [ ] ENDANGERS INSTITUTION SECURITY   [X] UPON RELEASE FROM SEGREGATION, NO BED AVAILABLE IN GENERAL POPULATION

DESCRIPTION OF CIRCUMSTANCES WHICH SUPPORT THE REASON(S) FOR PLACEMENT:

**On Friday, June 10, 2005, a decision was made to place you into Administrative Segregation, Specifically, due to lack of bed space available in General Population. You will remain housed in Administrative Segregation pending bed availability in General Population. You will be seen by the A-Facility Captain and / or I.C.C. for your future housing and proper housing needs**

- [ ] CONTINUED ON ATTACHED PAGE (CHECK IF ADDITIONAL)   [ ] IF CONFIDENTIAL INFORMATION USED, DATE OF DISCLOSURE: ___/___/___

| DATE OF ASU PLACEMENT 6/10/05 | SEGREGATION AUTHORITY'S PRINTED NAME SL CASTRO | SIGNATURE SL Cou... | TITLE LIEUTENANT |
|---|---|---|---|
| DATE NOTICE SERVED 1400 6/13/5 | TIME SERVED 1900 | PRINTED NAME OF STAFF SERVING ASU PLACEMENT NOTICE R MARTINEZ | SIGNATURE R.M. | STAFF'S TITLE C/O |
| [X] INMATE REFUSED TO SIGN | INMATE SIGNATURE REFUSED TO SIGN | | CDC NUMBER P37794 |

### ADMINISTRATIVE REVIEW (PART B)
*The following to be completed during the initial administrative review by Captain or higher by the first working day following placement*

| STAFF ASSISTANT (SA) | | INVESTIGATIVE EMPLOYEE (IE) | |
|---|---|---|---|
| STAFF ASSISTANT NAME | TITLE | INVESTIGATIVE EMPLOYEE'S NAME | TITLE |

**IS THIS INMATE:**

| | YES | NO | | | YES | NO |
|---|---|---|---|---|---|---|
| LITERATE? | [X] | [ ] | EVIDENCE COLLECTION BY IE UNNECESSARY | | [X] | [ ] |
| FLUENT IN ENGLISH? | [X] | [ ] | DECLINED ANY INVESTIGATIVE EMPLOYEE | | [X] | [ ] |
| ABLE TO COMPREHEND ISSUES? | [X] | [ ] | ASU PLACEMENT IS FOR DISCIPLINARY REASONS | | [X] | [ ] |
| FREE OF MENTAL HEALTH SERVICES DELIVERY SYSTEM NEEDS? | [X] | [ ] | DECLINED 1ST INVESTIGATIVE EMPLOYEE ASSIGNED | | | |
| DECLINING FIRST STAFF ASSISTANT ASSIGNED? | [X] | | | | | |

Any "NO" requires SA assignment   [ ] NOT ASSIGNED   Any "NO" may require IE assignment
[ ] NOT ASSIGNED

### INMATE WAIVERS

- [X] INMATE WAIVES OR DECLINES INTERVIEW WITH ADMINISTRATIVE REVIEWER   [X] INMATE WAIVES RIGHT TO 72 HOURS PREPARATION TIME
- [X] NO WITNESSES REQUESTED BY INMATE   | INMATE SIGNATURE REFUSED TO SIGN | DATE 10/13/2005 |

### WITNESSES REQUESTED FOR HEARING

| WITNESS NAME | TITLE/CDC NUMBER | WITNESS NAME | TITLE/CDC NUMBER |
|---|---|---|---|
| | | | |
| WITNESS NAME | TITLE/CDC NUMBER | WITNESS NAME | TITLE/CDC NUMBER |

**DECISION:** [X] RELEASE TO UNIT/FACILITY GP   [ ] RETAIN PENDING ICC REVIEW   [ ] DOUBLE CELL   [ ] SINGLE CELL PENDING ICC

REASON FOR DECISION: Declined To Be interviewed For C/O Forkner

RELOASE When Bed is AVAILABLE

| ADMINISTRATIVE REVIEWER'S PRINTED NAME PT SMITH | TITLE CAPT | DATE OF REVIEW 6/13/06 | TIME 1800 | ADMINISTRATIVE REVIEWER'S SIGNATURE R |
|---|---|---|---|---|
| CORRECTIONAL ADMINISTRATOR'S PRINTED NAME (if necessary) | | CORRECTIONAL ADMINISTRATOR'S CO-SIGNATURE (if necessary) | | DATE OF REVIEW |

**See chronological Classification Review document (CDC 128 - G) for specific hearing information**

NAME and NUMBER    BLOODSAW    P-20045    B8-209E    CDC-128-B (Rev. 4/74)

On Tuesday, October 17, 2006, at approximately 1145 hours, you were involved in a Battery on an Inmate with Inmate MEREDITH (D-84587, B8-107L) in the upper tier shower of B8 "A" Section. You have been deemed the victim of the battery by staff witnessing the incident. You have subsequently been considered a non-confidential enemy of Inmate MEREDITH.) This information will be documented on your Non-Confidential CDC Form 812 in your Central File.

ORIG: C-FILE
cc  : INMATE
      CCI
      AWC

_____
R. K. BELL
B FACILITY PROGRAM LIEUTENANT

---

GENERAL CHRONO

DATE    10/18/2006

NAME and NUMBER    BLOODSAW    P-20045    AF2-109L

CDC-128-B (Rev. 4/74)

On 08/31/05, at approximately 1430 hours, while I was assigned as AF2 Floor Officer, I told Inmate BLOODSAW, P-20045, AF2-109L, to pack his property. I told him that he would be moving to AF4-227. BLOODSAW told me that he would not move to 4 or 5 Block on 'A' Yard. BLOODSAW said, "There's too much going on in those blocks. I'll move to 6, 7 or 8." Sergeant S. Wright, the Ad Seg Sergeant came and spoke to BLOODSAW. Sergeant Wright told BLOODSAW that this move had been orchestrated to allow BLOODSAW access to the Law Library and the materials he needed for his case. BLOODSAW again refused to move, telling Sergeant Wright he would only move to 6, 7 or 8 Block. BLOODSAW's move was reversed and he was re-assigned to AF2-109L.

DATE    08/31/05

Original: C-File
    CC: AWC
        CC I
        Inmate

J. Marks,
Facility 'A'/Third Watch
Correctional Officer

3/w A-2 Floor 9/5/05

GENERAL CHRONO

On Wednesday, October 25, 2006, at approximately 0915 hours, while I was assigned as B Facility Behavioral Management Officer, I asked Inmate BLOODSAW (P-20045, B8-209L), if he would be willing to cell up with another inmate, he stated "No".  Due to his answer it is considered a refusal.  Inmate BLOODSAW has been made aware of this report.

J. BUSTAMANTE
CORRECTIONAL OFFICER
2/W, BMU OFFICER, RDO's S/S

ORIG: C-FILE
cc  : INMATE
       CCI
       AWC

DATE   10/25/06

PBSP

CUSTODIAL COUNSELING

State of California                                                                    Department of Corrections and Rehabilitation
                                                                                              CDC Form 695

## INMATE/PAROLEE DISCIPLINARY APPEALS SCREENING FORM

Name: _Bloodsaw_ _____    PBSP Log #: _____

Number: _P20095_ _____    Housing: _A2-103_ _____

**YOUR APPEAL IS BEING REJECTED/CANCELLED AND RETURNED FOR THE FOLLOWING:**

Screening Appeals Rejection Criteria:

[ ] 1.   The resolution is not within CDC's jurisdiction. See CCR, Title 15, Sections 3084.2(e) and 3084.3(c)(1).

[ ] 2.   The appeal duplicates the inmates previous appeal. See CCR, Title 15, Section 3084.3(c)(2).
      [ ] (a)  Your appeal has been screened out on _____ for _____.
      [ ] (b)  Your appeal is being reviewed at the _____ Level, Log # _____.
      [ ] (c)  Your appeal has been completed at the _____ Level, Log # _____.

[ ] 3.   The appeal concerns an anticipated action or decision. See CCR, Title 15, Section 3084.3(c)(3).

[ ] 6.   The appeal exceeds the 15 working days time limit, and the inmate has failed to offer a credible explanation as to why he
         could/did not submit the appeal within the time limit. See CCR, Title 15, Sections 3084.2(c), 3084.3(c)(6), and 3084.6(c).

[X] 8.   Abuse of the Appeal Process/Right to Appeal.
      [ ] (a)  Excessive filings. Submission of more than one non-emergency appeal within a seven-calendar-day period is
               excessive. See CCR, Title 15, Section 3084.4(a).
      [ ] (b)  Inappropriate statements. The Appeal contains false information, profanity, or obscene language. The appeal is
               rejected. See CCR, Title 15, Section 3084.4(b).
      [ ] (c)  Excessive verbiage. Appeal cannot be understood or is obscured by pointless verbiage or voluminous, unrelated
               documentation. See CCR, Title 15, Section 3084.4(c).
            [ ] (1)  Only allowed 1 added page, front and back, to describe the problem and action requested in Sections A and B,
                     per CCR, Title 15, Section 3084.2(a)(1).
            [ ] (2)  Only supporting documentation necessary to clarify appeal shall be attached to the appeal, per CCR, Title 15,
                     Section 3084.2(a)(2).
      [ ] (d)  Lack of cooperation. Appellant refused to cooperate and/or interview with the reviewer which has resulted in
               cancellation of the appeal, per CCR, Title 15, Section 3084.4(d).
            [ ] (1)  Your appeal was screened out and returned to you with instructions:
                     [ ]                        [ ]                        [ ]
      [X] (e)  Failed to reasonably demonstrate the decision, action, policy, or condition as having an adverse affect upon the
               inmate's welfare, per CCR, Title 15, Section 3084.1(a).
      [ ] (f)  This is a request for information. It is not an appeal. Write a note (GA-22, Request For Interview form or CDC-7362,
               Medical Request form).

[ ] 9.   Cannot appeal on behalf of another inmate/person. See CCR, Title 15, Sections 3084.2(d) and 3084.3(c)(7).

[ ] 10.  Issue resolved at previous level of Appeal review. See CCR, Title 15, Sections 3084.3(c)(8) and 3084.4(d).

Comments: _You are currently on single cell status._
_You have no appeal issue._

_____        **MAY 0 3 2006**
D. W. BRADBURY                           _____
Appeals Coordinator                      Date

The screening decision may not be appealed unless you can support an argument that the above is inaccurate.
In such a case, please return this form to the Appeals Office with the necessary supporting information.

## PERMANENT APPEAL ATTACHMENT - DO NOT REMOVE

APR 2 0 2000

**INMATE/PAROLEE
APPEAL FORM**
CDC 602 (12/87)

Location: Institution/Parole Region    Log No.    Category

1. IPBSP    1. _____    9/1 Wants single
2. _____    2. _____    cell status

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

NAME _Bloodsaw Theopric_    NUMBER _P20045_    ASSIGNMENT _____    UNIT/ROOM NUMBER _A2-103_

**A. Describe Problem:** CCI-Halbert according to 3377.1. Inmate Custody Designations. I am entitled to single cell housing 3000. Definitions page 12 a parole violator is P.C. 3057. and for any law enforcement officer it is P.C. 3056 on 11-8-02 I was illegally arrested as a parole violator P.C. 5011. I'm being denied my liberty and privileges for malice reasons 3001. Subject to Regulations. 3004. Rights and Respect of Others. 3075. Initial Inmate. 3075.1. Intake Processing. 3375. Classification Process. 3143. Incompatible Activity. 889 F.Supp. 1146. Evi. Co. 601. Classification of presumptions. P.C. 872. Ref.

If you need more space, attach one additional sheet.

**B. Action Requested:** To be officially "S" suffix single cell housing

Inmate/Parolee Signature: _T. Bloodsaw_    Date Submitted: _4-17-06_

**C. INFORMAL LEVEL (Date Received: _4-18-06_ )**

Staff Response: Partially Granted, At the current time you are designated custody as of 4-18-06; CLOB 5. You, And every inmate, are evaluated + Reviewed at each committee for the S-suffix along with several other issues so some parts of your status are subject to change at each committee.

Staff Signature: _[signature]_    Date Returned to Inmate: _4-18-06_

**D. FORMAL LEVEL**

If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

According to 3377.1. Inmate Custody Designations. partially granted is a insufficient unprof. negligent reason. P.C. 132. Offering False Evi. Fed. Rule 242. Deprivation of rights., 3901.3.1. Effective Date etc. Civ. Co. 2306. Defrauding principal; absence of authority., Gov. Co. 87300. Agency etc.

Signature: _T. Bloodsaw_    Date Submitted: _4-19-06_

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim

CDC Appeal Number: _____

25
APP. 2